UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KAITLYN ARCAMONE, : | |
| *Plaintiff,* : | |
| : | C.A. No.: 3:20-cv-19 |
| v. : | |
| : | |
| TOWN OF TRUMBULL, : | |
| CONNECTICUT, : | |
| *Defendant.* : | |
| : | **JANUARY 3, 2020** |

# COMPLAINT

1. This action arises from discriminatory practices in employment, including unlawful termination from employment, the adoption of rules, regulations and/or policies which have a disparate impact on women, sexual harassment and retaliation for previous opposition to discriminatory practices pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1983 and Connecticut General Statute § 46a-60 *et seq* and retaliatory discharge for engaging in constitutionally-protected activities pursuant to Connecticut General Statute § 31-51q.

2. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 *et seq.*, and supplemental jurisdiction over the remaining legal and equitable claims pursuant to 28 U.S.C. § 1367 *et seq.*

3. Venue of this action lies in the District of Connecticut pursuant to 28 U.S.C. § 1391 *et seq.*

## PARTIES

4. Plaintiff, Kaitlyn Arcamone (hereinafter "Plaintiff"), is a resident of the State of Connecticut.

5. Defendant, the Town of Trumbull (hereinafter "Defendant"), is a municipality and an employer pursuant to 42 U.S.C. § 2000e(b) and Connecticut General Statute § 46a-51(10).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. On or about March 26, 2019, Plaintiff filed Charges of Discrimination with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the U.S. Equal Employment Opportunity Commission ("EEOC") based upon gender discrimination, disparate treatment, disparate impact, sexual harassment and retaliation against Defendant.

7. The CHRO and EEOC issued Releases of Jurisdiction on October 9, 2019.

8. This action has commenced within ninety (90) days from the date of said Releases of Jurisdiction.

## COUNT I: TITLE VII (Unlawful Termination Based on Gender)

9. Plaintiff is female.

10. Defendant, through its Police Department, hired Plaintiff in or around October 2016 as a Police Officer.

11. Subsequent to her hire, Plaintiff attended the New Haven Police Academy. Plaintiff graduated in or around May 2017.

12. Subsequent to her graduation, Defendant required Plaintiff to undergo an evaluation period referred to as "Field Training and Evaluation" ("Field Training").

13. There are four (4) separate phases of Field Training, each supervised by an on-duty Field Training Officer ("FTO") employed by Defendant.

14. Defendant assigned Officer Michael Gonzalez ("Gonzalez") as Plaintiff's FTO for Phase One of her Field Training.

15. During Phase One of her Field Training, Gonzalez subjected Plaintiff to severe and pervasive sexual harassment and discrimination which altered the terms and conditions of her employment.

16. The sexual harassment and discrimination to which Plaintiff was subjected includes, but is not limited to, the following.

17. During the second week of Phase One, Gonzalez made Plaintiff drive to a remote area of Trumbull.  Upon entering that remote area, Gonzalez ordered Plaintiff out of the Police Cruiser, pushed her up against said Cruiser and attempted to kiss her.

18. Gonzalez, without solicitation or welcomeness from Plaintiff, described sexual experiences he has had in the past to Plaintiff.  For example, Gonzalez told Plaintiff about going to "sex parties" in New York City when he was younger.  Gonzalez also asked Plaintiff, on more than one occasion, whether she wanted to go with him to a "sex party."

19. At times, Plaintiff was ordered by Gonzalez to write police reports at a Police Substation located at the Trumbull Mall.  The Substation was a small, confined space.  On more than one occasion, Gonzalez entered the Substation, sat next to Plaintiff and attempt to touch Plaintiff's breasts by forcing his hand underneath Plaintiff's bullet-proof vest.

20. On more than one occasion, Gonzalez asked Plaintiff if they were "going to have sex."

21. At one point, Plaintiff attended a Police Union Meeting.  Gonzalez was also in attendance.  At that meeting, Gonzalez mouthed the phrase "I love you" to Plaintiff.

22. On multiple occasions, Plaintiff made Gonzalez aware that she did not welcome the conduct to which she was being subjected. Nevertheless, Gonzalez did not stop engaging in said conduct.

23. Plaintiff completed Phase One of Field Training. She then participated in, and successfully completed, Phases Two (2) and Three (3) of Field Training. Per Defendant's policies, Plaintiff had different FTOs for these additional phases.

24. Plaintiff, after successfully completing Phases Two and Three of Field Training, was elevated to Phase Four. Defendant again assigned Gonzalez to act as Plaintiff's FTO.

25. During Phase Four, Gonzalez continued to subject Plaintiff to harassment and discrimination similar to that which has been stated previously in this Complaint.

26. At or around the end of Phase Four, Plaintiff was alone in the women's locker room of Defendant's Police Station. At or around seven or eight o'clock in the evening, and without permission, Gonzalez entered the Locker Room and initiated a sexual encounter with Plaintiff. Plaintiff did not welcome the encounter nor did she give her permission for such an encounter to occur. However, being alone with Gonzalez in the Locker Room and the fact that there were few people in Police Station at that time, she was afraid that any action on her part to cease the encounter would result in additional physical harm. Therefore, she did not attempt to stop the encounter. The encounter lasted for no more than a few minutes. Subsequently, and without saying anything, Gonzalez left the Locker Room.

27. Subsequent to the above-referenced unwelcomed encounter, Gonzalez began harassing Plaintiff, both during and after work hours. The purpose of his harassment campaign was to force or otherwise coerce Plaintiff into commencing a romantic relationship with him. Such harassment included, but was not limited to, stalking Plaintiff after work, showing up at a

wedding in which Plaintiff was in attendance but to which Gonzalez was not invited, and sending Plaintiff text messages.  Such text messages included, but were not limited to, Gonzalez asking Plaintiff where she was, what she was doing, who she was with and accusing her of lying to him.  Gonzalez sent these (and similar) texts at least once a day, if not more.  Fearful and exhausted due to the campaign of harassment, Plaintiff acquiesced to Gonzalez's demands.

28. Subsequent to his harassment campaign, Gonzalez continued to stalk Plaintiff while she was on duty.  For example, when Plaintiff was on duty and in a Police Cruiser, Gonzalez accessed the Police Cruiser's GPS information, in real time, to determine where Plaintiff was and potentially if she was with any other male Police Officers.  As a result, Gonzalez routinely sent messages to Plaintiff asking where she was, who she was with, who she was talking to and, if she was with another male Police Officer, why she was talking with that male Officer.

29. At one point, Defendant requested that both Gonzalez and Plaintiff attend a meeting due to the fact that someone had sent an anonymous letter to the Defendant accusing both Gonzalez and Plaintiff of being romantically involved.  Prior to the meeting, Gonzalez put pressure on Plaintiff not to tell the Defendant about his harassing and discriminatory conduct which is stated above.  As a result of his conduct up to that point, Plaintiff was afraid to refuse to comply with Gonzalez's instruction.  Therefore, when asked by Defendant, she did not confirm Gonzalez's past offensive and inappropriate acts.

30. Gonzalez, who was married to another woman, was eventually forced to leave his marital residence.  Thereafter, Gonzalez forced himself into a living situation with Plaintiff.

31. During their forced living arrangement, Gonzalez became more and more violent towards Plaintiff.  Such violence included, but was not limited to, threatening to kill Plaintiff and, at one time, pointing a gun at Plaintiff.

32. Gonzalez's treatment of Plaintiff finally escalated into physical violence. For example, in or about March 2018, during an argument, Gonzalez grabbed Plaintiff by her hair, dragged her from the inside of their residence to the outside, threw her against her car and threatened to kill her.

33. As another example of violence, on one occasion, Plaintiff and Gonzalez were talking in the driveway attached to their residence. Gonzalez opened the driver-side door of his vehicle, sat in the driver's seat and started the car. Plaintiff then positioned herself between the driver seat and the open driver-side door. Suddenly, and without warning, Gonzalez shifted the car into reverse, causing the open driver-side door to hit Plaintiff. Gonzalez then shifted the car into park, exited the vehicle and threw Plaintiff down on the grass.

34. With respect to the latter violent incident described above, the Stratford Police were called by a witness and dispatched to the scene. At that time, Plaintiff told the Police that she was merely in an argument with Gonzalez and that he did not cause the physical harm that was visibly inflicted upon her.

35. As both Plaintiff and Gonzalez were Police Officers, upon information and belief, the Stratford Police Department contacted Defendant and advised them of the situation. Despite this, no action was taken by Defendant to either investigate the abuse or otherwise protect Plaintiff from Gonzalez.

36. In or around June 2018, upon information and belief, Defendant received an anonymous phone call expressing concern for Plaintiff. As a result of receiving that call, Deputy Chief Leonard Scinto ("Scinto") asked Plaintiff to have a conversation with him about her "safety." During the meeting with Scinto, Plaintiff initially denied that Gonzalez had engaged in any wrongdoing. However, upon the insistence of Deputy Chief Scinto, and the promise that

Defendant would help her, Plaintiff finally told both Defendant and the Stratford Police Department about Gonzalez's harassment and discrimination, the offensive and inappropriate conduct by Gonzalez, the unwanted and unwelcome encounter in the Police Station Locker Room, and the physical abuse to which she was subjected.

37. As a result of her reporting to the Stratford Police Department, Gonzalez was arrested and charged with criminal conduct.

38. Subsequent to her reporting to the Stratford Police, Defendant sought to terminate Plaintiff's employment for making false statements to both it and the Stratford Police Department, for failing to report Gonzalez's harassing and discriminatory activities and for engaging in "consensual sexual intercourse" with Gonzalez while on duty.

39. As per local rules, Defendant's recommendation for termination was presented to the Trumbull Police Commission ("Commission"). The Commission is made up of four members: three male and one female. On October 30, 2018, the Commission voted to accept the Defendant's recommendation and terminate Plaintiff's employment. Upon information and belief, the votes of the members were as follows: the three male members voted for termination; the female member voted against termination.

40. Upon information and belief, other similarly-situated male Police Officers have engaged in similar, if not worse, conduct than Plaintiff yet they were subjected to less severe levels of discipline.

41. Upon information and belief, Gonzalez has engaged in conduct with other female police officers that is similar to that which has been cited in this Complaint. Further, upon information and belief, Gonzalez has been implicated in forcing himself upon at least one voluntary female participant of the Defendant's Explorer Program. Upon information and belief,

this volunteer was at or below the age of 18.  Nevertheless, Defendant had not taken any prior measures to either protect Plaintiff or any other female employee or volunteer with which Gonzalez had contact.

42.  With respect to voluntary female participant as mentioned above, upon information and belief, Gonzalez was charged criminally for his conduct and, ultimately, given a suspended sentence and required to register as a sex offender.

43.  By the aforesaid actions, Defendant has violated Title VII by terminating Plaintiff's employment because of her gender.

44.  Plaintiff was damaged as a proximate result of Defendant's conduct.

**COUNT II: TITLE VII (Hostile Work Environment Based on Gender)**

45.  Plaintiff incorporates by reference Paragraphs 1 through 44 as if fully set forth herein.

46.  As stated supra, Plaintiff was subjected to a hostile working environment based on her gender by Gonzalez which altered the terms and conditions of her employment.

47.  Plaintiff never welcomed the conduct to which she was subjected.

48.  By the aforesaid actions, Defendant has violated Title VII by forcing Plaintiff to work in a hostile environment which altered the terms and conditions of her employment.

49.  Plaintiff was damaged as a proximate result of Defendant's conduct.

**COUNT III: TITLE VII (Retaliatory Discharge)**

50. Plaintiff incorporates by reference Paragraphs 1 through 49 as if fully set forth herein.

51. As stated supra, Plaintiff complained to Defendant about Gonzalez's discriminatory and harassing conduct. Subsequent to her complaints, Defendant terminated Plaintiff's employment.

52. By the aforesaid actions, Defendant has violated Title VII by retaliating against Plaintiff for her opposition to Defendant's employee's acts of discrimination and harassment.

53. Plaintiff was damaged as a proximate result of Defendant's conduct.

**COUNT IV: TITLE VII (Disparate Impact)**

54. Plaintiff incorporates by reference Paragraphs 1 through 53 as if fully set forth herein.

55. As stated above, Defendant recommended Plaintiff be terminated from her employment to the Commission. In support, the Defendant cited various violations of its policies, rules and regulations to justify its recommendation of terminating Plaintiff's employment. For example, Defendant relied on the following Sections of the Town of Trumbull Police Manual: Sections 2.1; 2.2; 3.1; 4.2; 4.8; 5.5; 5.24; 5.22; 5.25; and 5.43.

56. Further, upon information and belief, it is the publicly-stated policy and/or practice of the Defendant to discipline employees, up to and including termination, for making false statements to Defendant's Internal Affairs Department.

57. Defendant's policies have a disproportionate and disparate impact on female employees, especially female employees who are the victim of an abusive relationship. For example, the Policies do not take into account that females are disproportionately the victim in abusive relationships and that a common psychological response of victims of domestic violence

9

is to protect the victim's abuser.  Such protection can include, but not be limited to, lying or making false statements to friends, family and/or local authorities with respect to the abuse.

58. As such, Defendant has violated Title VII by adopting the aforementioned policies and practices which create a disproportionate impact on women.

59. Plaintiff seeks both declaratory and injunctive relief as a result of the aforementioned violations.

**COUNT V: § 1983 (Unlawful Termination based upon Gender)**

60. Plaintiff incorporates by reference Paragraphs 1 through 59 as if fully set forth herein.

61. By the aforesaid actions, Defendant has violated § 1983 by terminating Plaintiff's employment because of her gender.

62. Plaintiff was damaged as a proximate result of Defendant's conduct.

**COUNT VI: § 1983 (Hostile Working Environment based upon Gender)**

63. Plaintiff incorporates by reference Paragraphs 1 through 62 as if fully set forth herein.

64. By the aforesaid actions, Defendant has violated § 1983 by subjecting Plaintiff to a hostile working environment which she did not welcome and which altered the terms and conditions of her employment.

65. Plaintiff was damaged as a proximate result of Defendant's conduct.

**COUNT VII: Conn. Gen. Stat. § 46a-60 (Unlawful Termination based upon Gender)**

66. Plaintiff incorporates by reference Paragraphs 1 through 65 as if fully set forth herein.

67. By the aforesaid actions, Defendant has violated Conn. Gen. Stat. § 46a-60 by terminating Plaintiff's employment because of her gender.

68. Plaintiff was damaged as a proximate result of Defendant's conduct.

**COUNT VIII: Conn. Gen. Stat. § 46a-60 (Hostile Working Environment based on Gender)**

69. Plaintiff incorporates by reference Paragraphs 1 through 68 as if fully set forth herein.

70. By the aforesaid actions, Defendant has violated Conn. Gen. Stat. § 46a-60 by subjecting Plaintiff to a hostile working environment which she did not welcome and which altered the terms and conditions of her employment.

71. Plaintiff was damaged as a proximate result of Defendant's conduct.

**COUNT IX: Conn. Gen. Stat. § 46a-60 (Retaliatory Discharge)**

72. Plaintiff incorporates by reference Paragraphs 1 through 71 as if fully set forth herein.

73. As stated supra, Plaintiff complained to Defendant about Gonzalez's discriminatory and harassing conduct.  Subsequent to her complaints, Defendant terminated Plaintiff's employment.

74. By the aforesaid actions, Defendant has violated Conn. Gen. Stat.§ 46a-60 by retaliating against Plaintiff for her opposition to Defendant's employee's acts of discrimination and harassment.

75. Plaintiff was damaged as a proximate result of Defendant conduct.

**COUNT X: Conn. Gen. Stat. § 31-51q (Retaliatory Discharge for Engaging in Constitutionally-Protected Activities)**

76. Plaintiff incorporates by reference Paragraphs 1 through 75 as if fully set forth herein.

77. As stated <u>supra</u>, Plaintiff reported to the Stratford Police Department that she was the victim of assault and abuse by Gonzalez.

78. Plaintiff's action of reporting to the Stratford Police Department Gonzalez's criminal actions against her is a constitutionally-protected activity.

79. In retaliation for her exercise of her constitutionally-protected activity as described <u>supra</u>, Defendant terminated Plaintiff's employment.

80. As such, Defendant is has violated Conn. Gen. Stat. § 31-51q by terminated Plaintiff's employment due to her engaging in the aforementioned constitutionally-protected activities.

81. Plaintiff was damaged as a proximate result of Defendant's conduct.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that this Court:

(1) declare that the actions complained of in this Complaint are unlawful;

(2) order the injunctive relief as requested <u>supra;</u>

(3) order the Defendant to make Plaintiff whole;

(4) order that the Defendant pay Plaintiff's compensatory damages;

(5) order that the Defendant pay Plaintiff punitive damages;

(6) retain jurisdiction of this action to ensure full compliance;

(7) order any and all other equitable relief sought in this Complaint;

(8) order the Defendant to pay Plaintiff's costs, expenses and reasonable attorney's fees;

(9)  grant such other legal or equitable relief to Plaintiff as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

                Respectfully submitted by,
                Plaintiff,
                By and through her attorney,

                */s/  Daniel T. Angelone*
                Daniel T. Angelone (# CT29307)
                Angelone Law Offices, L.L.C.
                799 Silver Lane
                2nd Floor
                Trumbull, CT  06611
                203-378-2979
                203-375-5003 (fax)
                daniel@angelonelaw.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

_____
                                           :
**KAITLYN ARCAMONE,**                  :
            *Plaintiff,*       :
                                           :   **C.A. No.:**  3:20-cv-19
**v.**                                         :
                                           :
**TOWN OF TRUMBULL,**          :
**CONNECTICUT,**                      :
            *Defendant.*      :
_____ :    **JANUARY 3, 2020**

### JURISDICTIONAL AMOUNT SUFFICIENCY

    Plaintiff's damages are in an amount sufficient to invoke the jurisdiction of this Court.

                                                     Respectfully submitted by,
                                                     Plaintiff,

                                                     By and through her attorney,

                                                     */s/ Daniel T. Angelone*
                                                     Daniel T. Angelone (# CT29307)
                                                     Angelone Law Offices, L.L.C.
                                                     799 Silver Lane
                                                     2ND Floor
                                                     Trumbull, CT  06611
                                                     203-378-2979
                                                     203-375-5003 (fax)
                                                     daniel@angelonelaw.com