## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

KAITLYN ARCAMONE,
    *Plaintiff*,

    v.                              No. 3:20-cv-00019 (VAB)

TOWN OF TRUMBULL, CONNECTICUT,
    *Defendant.*

### RULING AND ORDER ON MOTION TO DISMISS

Kaitlyn Arcamone ("Plaintiff") filed this action against the Town of Trumbull, Connecticut ("Trumbull" or "Defendant"), alleging various counts of employment discrimination under Title VII of the Civil Rights Act, Section 1983, and Connecticut law. Compl., ECF No. 1 (Jan. 3, 2020).

Trumbull now moves to dismiss Counts One, Four, Five, and Seven under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Mot. to Dismiss, ECF No. 12 (Mar. 6, 2020) ("Def.'s Mot.").

For the following reasons, Defendant's motion to dismiss is **DENIED**. Ms. Arcamone's request to amend Count Four of her Complaint is **GRANTED.** Ms. Arcamone must file her Amended Complaint by **February 26, 2021**.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

#### A.  Factual Allegations

Ms. Arcamone is female and a resident of Connecticut. Compl. ¶ 4, 9.

Ms. Arcamone alleges that "Defendant, through its Police Department, hired [her] in or around October 2016 as a [p]olice [o]fficer." *Id.* ¶ 10. Ms. Arcamone allegedly "attended the New Haven Police Academy" and "graduated in or around May 2017." *Id.* ¶ 11.

Ms. Arcamone alleges that "[s]ubsequent to her graduation, Defendant required [her] to undergo an evaluation period referred to as 'Field Training and Evaluation'" ("Field Training"). *Id*. ¶ 12. Allegedly, "[t]here are four (4) separate phases of Field Training, each supervised by an on-duty Field Training Officer ('FTO') employed by Defendant." *Id*. ¶ 13.

Allegedly, "Defendant assigned Officer Michel Gonzalez . . . as [her] FTO for Phase One of her Field Training." *Id*. ¶ 14. Ms. Arcamone alleges that "[d]uring Phase One of her Field Training, [Officer] Gonzalez subjected [her] to severe and pervasive sexual harassment and discrimination," which she argues "altered the terms and conditions of her employment." *Id*. ¶ 15.

Ms. Arcamone alleges that "[d]uring the second week of Phase One, [Officer] Gonzalez made [her] drive to a remote area of Trumbull . . . ordered [her] out of the [p]olice [c]ruiser, pushed her up against [the] [c]ruiser and attempted to kiss her." *Id*. ¶ 17. Officer Gonzalez allegedly "without solicitation . . . from [Ms. Arcamone], described sexual experience he has had in the past to [her]." *Id*. ¶ 18. Ms. Arcamone alleges that Officer Gonzalez told her "about going to 'sex parties' in New York City when he was younger" and asked her "on more than one occasion, whether she wanted to go with him to a 'sex party.'" *Id*.

Ms. Arcamone further alleges that she "was ordered by [Officer] Gonzalez to write police reports at a [p]olice [s]ubstation located at the Trumbull Mall . . . a small, confined space." *Id*. ¶ 19. "On more than one occasion," Officer Gonzalez "entered the [s]ubstation, sat next to [Ms. Arcamone] and attempt[ed] to touch [her] breasts by forcing his hand underneath [her] bullet-proof vest." *Id*.

Officer Gonzalez also allegedly "asked [Ms. Arcamone] if they were 'going to have sex,'" *id*. ¶ 20, and at a Police Union Meeting, "mouthed the phrase 'I love you' to [her]," *id*. ¶

2

21.

Ms. Arcamone alleges that "[o]n multiple occasions, [she] made [Officer] Gonzalez aware that she did not welcome the conduct to which she was being subjected," but Officer Gonzalez "did not stop engaging in [the] conduct." *Id.* ¶ 22.

Ms. Arcamone allegedly "completed Phase One of Field Training," and then completed Phase Two and Phase Three of Field Training with different FTOs "per Defendant's policies." *Id.* ¶ 23.

After Phase Two and Phase Three, Mr. Arcamone alleges that she "was elevated to Phase Four" and "Defendant again assigned [Officer] Gonzalez to act as [her] FTO." *Id.* ¶ 24.

Ms. Arcamone alleges that "[d]uring Phase Four, [Officer] Gonzalez continued to subject [her] to [similar] harassment and discrimination." *Id.* ¶ 25.

"At or around the end of Phase Four," Ms. Arcamone alleges that she "was alone in the women's locker room of Defendant's [p]olice [s]tation . . . [a]t or around seven or eight o'clock in the evening." *Id.* ¶ 26. "[W]ithout permission," Officer Gonzalez allegedly "entered the [l]ocker [r]oom and initiated a sexual encounter with [her]." Ms. Arcamone alleges that she "did not welcome the encounter nor did she give her permission for such an encounter to occur," but because she was "alone with [Officer] Gonzalez in the [l]ocker [r]oom and . . . there were few people in [the] [p]olice [s]tation at that time, she was afraid that any action on her part to cease the encounter would result in additional physical harm." *Id.* Ms. Arcamone alleges that "she did not attempt to stop the encounter," which "lasted for no more than a few minutes." *Id.* Officer Gonzalez allegedly left the locker room after the encounter "without saying anything." *Id.*

After this encounter, Ms. Arcamone alleges that Officer Gonzalez "began harassing [her], both during and after work hours." *Id.* ¶ 27. Ms. Arcamone alleges that the "harassment

campaign was to force or otherwise coerce [her] into commencing a romantic relationship with him." *Id.* Officer Gonzalez allegedly "stalk[ed] [Ms. Arcamone] after work, show[ed] up at a wedding in which [Ms. Arcamone] was in attendance but to which [Officer] Gonzalez was not invited, and sending [Ms. Arcamone] text messages." *Id.* In these text messages, Officer Gonzalez allegedly "ask[ed] [Ms. Arcamone] where she was, what she was doing, who she was with and accusing her of lying to him." Officer Gonzalez allegedly "sent these (and similar) texts at least once a day, if not more." *Id.*

Ms. Arcamone alleges that "[f]earful and exhausted due to the campaign of harassment, [she] acquiesced to [Officer] Gonzalez demands." *Id.*

Ms. Arcamone alleges that Officer Gonzalez "continued to stalk [her] while she was on duty." *Id.* ¶ 28. Officer Gonzalez allegedly accessed [Ms. Arcamone's] [p]olice [c]ruiser's GPS information, in real time, to determine where [she] was and potentially if she was with any other male [p]olice [o]fficers." *Id.* Ms. Arcamone alleges that Officer Gonzalez "routinely sent messages to [her] asking where she was and who she was with, who she was talking to and, if she was with another male [p]olice [o]fficer, why she was talking with that male [o]fficer." *Id.*

Defendant allegedly "requested that both [Officer] Gonzalez and [Ms. Arcamone] attend a meeting due to the fact that someone had sent an anonymous letter to the Defendant accusing both [of them]. . . of being romantically involved." *Id.* ¶ 29. Ms. Arcamone alleges that "[p]rior to the meeting, [Officer] Gonzalez put pressure on [her] not to tell . . . Defendant about his harassing and discriminatory conduct." *Id.* "As a result of his conduct up to that point," Ms. Arcamone alleges that she "was afraid to refuse to comply with [Officer] Gonzalez's instruction." *Id.* Ms. Arcamone alleges this is why "when asked by the Defendant, she did not confirm [Officer] Gonzalez's past offensive and inappropriate acts." *Id.*

4

Ms. Arcamone alleges that after Officer Gonzalez was "forced to leave his marital residence," he "forced himself into a living situation with [her]." *Id.* ¶ 30. "During their forced living arrangement," Officer Gonzalez allegedly "became more and more violent towards [Ms. Arcamone]," including "threatening to kill [her], and at one time, pointing a gun at [her]." *Id.* ¶ 31.

Ms. Arcamone alleges that Officer Gonzalez "escalated into physical violence." *Id.* ¶ 32. "[I]n or about March 2018, during an argument," Officer Gonzalez allegedly "grabbed [Ms. Arcamone] by her hair, dragged her from the inside of their residence to the outside, threw her against her car and threatened to kill her." *Id.*

On another occasion, Ms. Arcamone alleges that she and Officer Gonzalez "were talking in the driveway attached to their residence" when Officer Gonzalez "opened the driver-side door of his vehicle, sat in the driver's seat[,] and started the car." *Id.* ¶ 33. Ms. Arcamone allegedly "positioned herself between the driver seat and the open driver-side door." *Id.* Allegedly, "without warning, [Officer] Gonzalez shifted the car into reverse, causing the open driver-side door to hit [Ms. Arcamone]." *Id.* Officer Gonzalez then allegedly "shifted the car into park, exited the vehicle and threw [Ms. Arcamone] down on the grass." *Id.* Stratford Police were allegedly "called by a witness and dispatched to the scene." *Id.* ¶ 34. Ms. Arcamone alleges that she "told the [p]olice that she was merely in an argument with [Officer] Gonzalez and that he did not cause the physical harm that was visibly inflicted upon her." *Id.*

Ms. Arcamone alleges that because both she and Officer Gonzalez were police officers, "the Stratford Police Department contacted Defendant and advised them of the situation." *Id.* ¶ 35. Ms. Arcamone alleges that "no action was taken by Defendant to either investigate the abuse or otherwise protect [her] from [Officer] Gonzalez." *Id.*

"In or around June 2018," Ms. Arcamone alleges that "Defendant received an anonymous phone call expressing concern for [her]." *Id.* ¶ 36.  Allegedly, "[a]s a result of receiving that call, Deputy Chief Leonard Scinto . . . asked [Ms. Arcamone] to have a conversation with him about her 'safety.'" *Id.* Ms. Arcamone alleges that during this meeting, she "initially denied that [Officer] Gonzalez had engaged in any wrongdoing." *Id.* Ms. Arcamone alleges:

> However, upon the insistence of Deputy Chief Scinto, and the promise that Defendant would help her, [she] finally told both Defendant and the Stratford Police Department about [Officer] Gonzales's harassment and discrimination, the offensive and inappropriate conduct by [Officer] Gonzalez, the unwanted and unwelcome encounter in the [p]olice [s]tation [l]ocker [r]oom, and the physical abuse to which she was subjected.

*Id.* "As a result of [Ms. Arcamone's] reporting to the Stratford Police Department," Officer Gonzalez allegedly "was arrested and charged with criminal conduct." *Id.* ¶ 37.

Ms. Arcamone alleges that "[s]ubsequent to her reporting to the Stratford Police, Defendant sought to terminate [her] employment for making false statements to both it and the Stratford Police Department, for failing to report [Officer] Gonzalez's harassing and discriminatory activities and for engaging in 'consensual sexual intercourse' with [Officer] Gonzalez while on duty." *Id.* ¶ 38. Ms. Arcamone alleges that "Defendant cited various violations of its policies, rules and regulations to justify its recommendation of terminating [her] employment." *Id.* ¶ 55. Allegedly, "it is a publicly-stated policy and/or practice of the Defendant to discipline employees, up to and including termination, for making false statements to Defendant's Internal Affairs Department." *Id.* ¶ 56.

Allegedly, "Defendant's recommendation for termination was presented to the Trumbull Police Commission" ("Commission"). *Id.* ¶ 39. The Commission, comprised of "four members, three male and one female," allegedly "voted to accept the Defendant's recommendation and

terminate [Ms. Arcamone's] employment" on October 30, 2018. *Id.* Ms. Arcamone alleges that "the three male members voted for termination" and "the female member voted against termination." *Id.*

Ms. Arcamone alleges that "other similarly-situated male [p]olice [o]fficers have engaged in similar, if not worse, conduct than [her,] yet they were subjected to less severe levels of discipline." *Id.* ¶ 40.

Ms. Arcamone further alleges that Officer Gonzalez "has engaged in [similar] conduct with other female police officers," including "forcing himself upon at least one voluntary female participant of the Defendant's Explorer Program." *Id.* ¶ 41. Allegedly, "Defendant had not taken any prior measures to either protect [Ms. Arcamone] or any other female employee or volunteer with which [Officer] Gonzalez had contact." *Id.* "With respect to the voluntary female participant," Ms. Arcamone alleges that Officer Gonzalez "was charged criminally for his conduct and, ultimately, given a suspended sentence and required to register as a sex offender." *Id.* ¶ 42.

### B.  Procedural Background

On or about March 26, 2019, Ms. Arcamone filed discrimination charges with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the United States Equal Employment Opportunity Commission ("EEOC"), alleging gender discrimination, disparate treatment, disparate impact, sexual harassment, and retaliation against Defendant. *Id.* ¶ 6. On October 9, 2019, the CHRO and EEOC issued Releases of Jurisdiction." *Id.* ¶ 7.

On January 3, 2020, Ms. Arcamone filed her Complaint. Compl.

On March 6, 2020, Defendant filed a motion to dismiss Counts One, Four, Five, and Seven of the Complaint with supporting materials. Def.'s Mot.; Mem. of Law in Supp. of Def.'s

Mot. to Dismiss Counts One, Four, Five, and Seven, ECF No. 12-1 (March 6, 2020) ("Def.'s Mem.").

On March 27, 2020, Ms. Arcamone filed an objection to Defendant's motion to dismiss. Pl.'s Obj. to Def.'s Mot. to Dismiss, ECF No. 17 (March 27, 2020) ("Pl.'s Obj."); Pl.'s Mem. of Law in Supp. of Her Obj. to Def.'s Mot. to Dismiss, ECF No. 17-1 (March 27, 2020) ("Pl.'s Mem.").

On April 10, 2020, Defendant replied to Ms. Arcamone's objection. Def.'s Reply Mem. in Supp. of Mot. to Dismiss, ECF No. 18 (Apr. 10, 2020) ("Def.'s Reply").

On January 27, 2021, the Court decided to cancel oral argument and decide the pending motion based on the parties' written submissions. Order, ECF No. 23 (Jan. 27, 2021).

## II. STANDARD OF REVIEW

To survive a motion to dismiss under 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at

679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

## III.   DISCUSSION

### A.  Counts One, Five, and Seven

In her first and fifth counts, Ms. Arcamone alleges that Defendant violated Title VII and Section 1983, respectively, "by terminating [her] employment because of her gender." Compl. ¶¶ 43, 61. For Count Seven, Ms. Arcamone alleges that "Defendant violated Conn. Gen. Stat. § 46a-60 by terminating [her] employment because of her gender." *Id.* ¶ 67.

In *McDonnell Douglas Corp. v. Green*, the Supreme Court established a burden-shifting framework to evaluate claims of employment discrimination and outlined the elements of a *prima facie* case. 411 U.S. 792 (1973). Consistent with this decision, in the Second Circuit, a plaintiff must show (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) there is "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of N. Y.*, 795 F.3d 297, 311 (2d Cir. 2015). A plaintiff's burden for establishing a *prima facie* case is *de minimis*. *Woodman v. WWOR–TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) ("We have characterized plaintiff's *prima facie* burden as 'minimal' and '*de minimis*.'" (citing

*Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001))).

In the initial pleading stage of litigation for a Title VII employment discrimination claim, "allegation of facts supporting a minimal plausible inference of discriminatory intent suffices . . . because this entitles the plaintiff to the temporary presumption of *McDonnell Douglas* until the defendant furnishes its asserted reasons for its action against the plaintiff." *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016); *see also Dawson v. N.Y. City Transit Auth.*, 624 F. App'x 763, 770 (2d Cir. 2015) (summary order) ("At the pleading stage, district courts would do well to remember th[e] exceedingly low burden that discrimination plaintiffs face . . . .").

For a Title VII discrimination claim to survive a motion to dismiss, a plaintiff must establish in her complaint a *prima facie* case of discrimination. The plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) there is "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. The allegations need not, however, give "plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination." *Id.*; *Id.* at 307 ("[T]he Supreme Court ruled [in *McDonnell Douglas*] that, in the initial phase of the case, the plaintiff can establish a prima facie case without evidence sufficient to show discriminatory motivation.").

Disparate treatment claims under Section 1983 claims are "subject to the burden-shifting evidentiary framework set forth in *McDonnell Douglas.*" *Id.* at 312 (citing *Ruiz v. Cnty. of Rockland,* 609 F.3d 486, 491 (2d Cir.2010)); *see Moore v. Ferron-Poole*, No. 3-14-CV-1540 (WWE), 2016 WL 6476937, at *2 (D. Conn. Oct. 31, 2016) ("An equal protection claim pursuant to Section 1983 is analyzed according the burden shifting framework established by *McDonnell Douglas*.").

Connecticut Fair Employment Practices Act ("CFEPA") bars "an employer . . . to discharge from employment any individual . . . because of the individual's . . . sex, gender identity or expression." Conn. Gen. Stat. § 46a-60(b)(1). "Under the CFEPA, these claims are evaluated under the burden-shifting framework set forth in *McDonnell Douglas,* for parallel federal claims under Title VII." *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 88 (2d Cir. 2019) (internal citations omitted) (citing *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010) ("The analysis of discrimination and retaliation claims under CFEPA is the same as under Title VII.")).

Defendant does not contest that Ms. Arcamone has established the first three elements of a *prima facie* case of employment discrimination. Ms. Arcamone as a female, Compl. ¶ 9, is a member of protected class. Ms. Arcamone was qualified for her position because she was hired as a police officer by the Defendant, *id.* ¶ 10; she attended the New Haven Police Academy, *id.* ¶ 11; she graduated from the academy, *id.* ¶¶ 11, 12, she participated in four phases of Field Training, *id.* ¶¶ 23–25, and she worked as a police officer, *id.* ¶¶ 27–28. Ms. Arcamone also suffered an adverse employment action because she was terminated from her position. *See Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) ("To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities . . . includ[ing] termination of employment . . .").

Defendant address only the fourth element: "minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. With regard to both Count One, Count Five, and Count Seven, Defendant argues that Ms. Arcamone's "allegations are vague and [she] fails to allege any facts plausibly indicating that any adverse employment action was because of her gender." Def.'s Mem. at 8 (emphasis omitted); *Id.* at 10-

11 (incorporating the argument against Count One for Count Five); *Id.* at 11-12 (incorporating the argument against Count One for Count Seven). In Defendant's view, Ms. Arcamone "does not allege that . . . [the] three legitimate, nondiscriminatory reasons for her termination were pretext for a determination resulting from discrimination," but "merely alleges the vague assertion that male police officers" have been subjected to less severe discipline for engaging in similar or worse conduct. *Id.* at 8. Defendant argues that Ms. Arcamone "fails to state any facts which would support her allegations that other similarly[-]situated male police officers" who have engaged in similar conduct with less severe disciplinary consequences or "describe any similarly[-]situated male employee who received more favorable treatment." *Id.* at 9.

Ms. Arcamone argues that "Defendant fails to take into account . . . that the fourth *prima facie* element is relaxed during the [p]leadings stage of litigation." Pl.'s Mem. at 4 (second emphasis omitted). Ms. Arcamone argues that she "clearly alleged sufficient facts to establish the *minimum* requirements of her *prima facie* case to defeat Defendant's [m]otion to [d]ismiss," by alleging in her Complaint that "she was treated differently than other 'similarly-situated male [p]olice [o]fficers' with respect to conduct and discipline." *Id.* at 6–7 (emphasis omitted) (citing Compl. ¶ 40).

In reply, Defendant argues that Ms. Arcamone's assertion of a "relaxed" burden under *Littlejohn* is "misguided" and that she "needs to, at a minimum, be able to provide facts demonstrating that the employer was motivated by discriminatory intent." Def.'s Reply at 1-2. Defendant notes that the cases cited in support by Ms. Arcamone involved *pro se* litigants and that Ms. Arcamone, represented by counsel, is "not entitled to the heightened liberal interpretation of her Complaint afforded to [] *pro se* plaintiffs." *Id.* at 3 (citing *Shouq v. Norbert E. Mitchell Co.,* No. 3:18-CV-00293 (CSH), 2018 WL 4158382, at *1 (D. Conn. Aug. 30, 2018)

(plaintiff filing *pro se*); *Boykin v. KeyCorp*, 521 F.3d 202, 206 (2d Cir. 2008) (same)). Defendant argues that Ms. Arcamone "has failed to even allege that male police officers who were similar to her in any material respect were treated more favorably" and "has only provided conclusory allegations that male officers engaged in similar if not worse conduct, without identifying the officers or even the conduct . . . ." *Id.* at 6.

With respect to the sufficiency of Ms. Arcamone's pleadings, the Court disagrees.

While the pleading standard for an inference of discrimination is not the same for a represented plaintiff as it is for a *pro se* plaintiff, *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*pro se* party's filings must be construed "liberally" and interpreted "to raise the strongest arguments that they suggest"), "the evidence necessary to satisfy the initial burden of establishing that an adverse employment action occurred under circumstances giving rise to an inference of discrimination is minimal," *Littlejohn*, 795 F.3d at 313 (internal quotations and alterations omitted) (citing *Zimmermann,* 251 F.3d at 381). "An inference of discrimination can arise from circumstances including . . . the more favorable treatment of employees not in the protected group." *Id.* at 312 (internal quotation marks omitted). "To allege the requisite discriminatory intent, a plaintiff may allege 'facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.'" *Levy v. Legal Aid Soc'y*, 408 F. Supp. 3d 209, 214 (E.D.N.Y. 2019) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)). Indirect evidence may include "evidence that similarly situated comparators outside of Plaintiff's protected class were treated more favorably than Plaintiff." *Id.* (citing *Littlejohn*, 795 F.3d at 312). "[C]ourts generally will look to whether a plaintiff and his comparators were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'" *Id.* (quoting *Graham v. Long Island R.R.*,

230 F.3d 34, 40 (2d Cir. 2000)).

Ms. Arcamone meets this "minimal" pleading standard. *Littlejohn*, 795 F.3d at 313. She alleges that "[u]pon information and belief, other similarly-situated male [p]olice [o]fficers have engaged in similar, if not worse, conduct than [she did,] yet they were subjected to less severe levels of discipline." Compl. ¶ 40. The male police officers that Ms. Arcamone references are "similarly[-]situated comparators outside of [her] protected class." *Levy*, 408 F. Supp. 3d at 214. The allegation that they were "subjected to less severe levels of discipline," Compl. ¶ 40, is sufficient for purposes of alleging that they were "treated more favorably than Plaintiff," *Levy*, 408 F. Supp. 3d at 214, at least at this stage of the case. Ms. Arcamone also alleges that these male police officers "engaged in comparable conduct." *Id.*  Although brief, the Court finds that these allegations meet the minimal pleading standard articulated in *Littlejohn*, 795 F.3d at 313.

Accordingly, as Ms. Arcamone's allegations are sufficient to continue her claims under Title VII, Section 1983, and CFEPA, Defendant's motion to dismiss as to Count One, Count Five, and Count Seven will be denied.

### B.  Count Four

For her fourth count of her Complaint, Ms. Arcamone alleges that "Defendant has violated Title VII by adopting . . . policies and practices which create a disproportionate impact on women." Compl. ¶ 58.

Defendant moves to dismiss this count, arguing Ms. Arcamone "failed to meet her burden of pleading a plausible claim of Title VII disparate impact because her vague reference to general statistics with respect to female victims of abusive relationships 'lying or making false statements' is not enough to state a claim for disparate impact." Def.'s Mem. at 15; Compl. ¶ 57. Rather than object, Ms. Arcamone seeks leave to amend Count Four of her Complaint under

Rule 15. Pl.'s Mem. at 9. Defendant "does not respond" to Ms. Arcamone's request to amend. Def.'s Reply at 6.

Under Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Ms. Arcamone filed her objection seeking to amend Count Four "21 days after [Defendant's] motion under Rule 12(b)," *see* Def.'s Mot. (filed on March 6, 2020); Pl.'s Obj. (filed on March 27, 2020), and thus, may amend her Complaint "as a matter of course," Fed. R. Civ. P. 15(a)(1). Moreover, Defendant does not object to the amendment, Def.'s Reply at 6, and "court[s] should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2).

Accordingly, the Court grants Ms. Arcamone's request to amend Count Four of her Complaint and denies Defendant's motion to dismiss as to Count Four.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **DENIED**. Ms. Arcamone's request to amend Count Four her Complaint is **GRANTED.** Ms. Arcamone must file her Amended Complaint by **February 26, 2021**.

**SO ORDERED** at Bridgeport, Connecticut, this 29th day of January, 2021.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

16